**WO**

NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| SRK CONSULTING, INC., an out of state corporation; AIG COMMERCIAL INSURANCE COMPANY OF CANADA, fka COMMERCE AND INDUSTRY INSURANCE COMPANY OF CANADA, a foreign corporation,<br><br>    Plaintiffs,<br><br>vs.<br><br>MMLA PSOMAS, INC.,<br><br>    Defendant. | No. CV-09-0611-PHX-GMS<br><br>**ORDER** |

Pending before the Court is the Motion to Dismiss of Defendant MMLA Psomas ("Psomas"). (Dkt. # 7.) For the reasons set forth below, the Court grants the Motion in part and denies the Motion in part.[1]

**BACKGROUND**

Plaintiff SRK Consulting ("SRK") is a Colorado corporation, authorized to and doing business as an engineering consulting firm in Pinal County, Arizona. Plaintiff AIG

---

[1] The parties have requested oral argument. The request is denied because the parties have thoroughly discussed the law and the evidence, and oral argument will not aid the Court's decision. *See Lake at Las Vegas Investors Group, Inc. v. Pac. Malibu Dev.*, 933 F.2d 724, 729 (9th Cir. 1991).

Commercial Insurance Company of Canada ("AIG") is a foreign corporation and insurer of Plaintiff SRK for purposes of this suit. Defendant Psomas is a California corporation and the successor in interest of MMLA, an engineering firm.

In 2004, SRK contracted with BHP Copper ("BHP") to provide services to assist in the closure of BHP's San Manuel Mine and Plant Site located in Pinal County, Arizona. SRK entered into a subcontract with MMLA for design services pertaining to the storm water diversion channels of the Heap Leach Facility portion of the BHP mine closure.[2] Under the Subcontract, MMLA was explicitly identified as an independent contractor.

Pursuant to the Subcontract, MMLA was required to "provide detailed regrading and drainage plans for select areas of the mine site." (Dkt. # 7 Pt. 2 at 2.) In the Subcontract, MMLA "warrant[ed] that its design, engineering and other services performed . . . [would] be performed in a manner consistent with that level of care and skill ordinarily exercised by members of the profession currently practicing under similar conditions." (Dkt. # 7 Pt. 2 at 3-4.) Additionally, MMLA agreed to be "responsible for the professional quality, technical accuracy and the coordination of all designs, drawings, specifications, and other services" and remain "liable to SRK in accordance with applicable law for all damages to SRK caused by its negligent performance of any services furnished under [the] Subcontract." (Dkt # 7 Pt. 2 at 4.) The Subcontract also contained an indemnity clause stating that "any liability of any kind arising out of or alleged to arise out of work for which [MMLA] is responsible shall fall upon [MMLA] and upon no other person or entity" and MMLA will protect Plaintiff SRK against any "claims, losses, or damages" arising from the acts or omissions of MMLA. (Dkt. # 7 Pt. 2 at 5.)

Construction on the BHP mine closure project was completed in May 2006. During July 2006, however, the mine suffered erosion and top soil damage resulting from monsoon-type rainstorms. Plaintiffs allege that MMLA's diversion channel design work was

---

[2] Attachment A to the Subcontract provides a detailed explanation of the design services MMLA contracted to provide. (Dkt. # 7 Pt. 2 at 8.)

- 2 -

faulty and the damage could have been avoided if the diversion channels had been properly designed.

On February 14, 2008, BHP, SRK, and MMLA participated in a settlement conference to resolve BHP's claims. Subsequently, SRK entered into a Settlement Agreement with BHP for the amount of $1,750,000. SRK remitted their insurance deductible amount of $150,000 directly to BHP, and AIG paid the remaining balance of the settlement owed to BHP. MMLA offered no money at the settlement conference, indicated it had no settlement authority, and was not a party to the Settlement Agreement. While liability is not admitted by any party within the Settlement Agreement, the Agreement released SRK and its "respective engineers, employees, [and] agents" from liability and claims arising from SRK's work on the project. (Dkt. # 16 Pt. 2 at 2-3.) The Settlement Agreement also expressly includes a release of any claims relating to the design of the Heap Leach Facility. (Dkt. # 16 Pt. 2 at 3.) Plaintiffs allege in their Complaint that the Settlement Agreement extinguished any claims BHP may have against Defendant for the damage to BHP's mine.

On October 9, 2008, Plaintiffs initiated this action against Defendant in state court, asserting contractual indemnity, common law indemnity, contribution, breach of contract, and negligence claims. (Dkt. # 1 Pt. 2.) This case was removed by Defendant on March 26, 2009. (Dkt. # 1.) On April 2, 2009, Defendant filed a motion seeking dismissal of claims II (common law indemnity), III (contribution), and IV (breach of contract). (Dkt. # 7.)

**DISCUSSION**

**I. Standard of Review**

To survive a dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must contain more than a "formulaic recitation of the elements of a cause of action"; it must contain factual allegations sufficient to "raise the right of relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* (quoting 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004)). While "a complaint need not

contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 555) (internal citations omitted).

When analyzing a complaint for failure to state a claim under Rule 12(b)(6), "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the non-moving party." *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996).[3] In addition, the Court must assume that all general allegations "embrace whatever specific facts might be necessary to support them." *Peloza v. Capistrano Unified Sch. Dist.*, 37 F.3d 517, 521 (9th Cir. 1994). Although "a complaint need not contain detailed factual allegations," *Clemens*,

---

[3] Under the incorporation by reference doctrine,

> even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim . . . . The defendant may offer such a document, and the district court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6).

*United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (internal citations omitted). Here, the Complaint refers extensively to the Subcontract Agreement (Dkt. # 7 Pt. 2) and the Settlement Agreement between BHP and SRK (Dkt. # 16 Pt. 2), and those agreements form the basis of a number of Plaintiffs' claims. As neither party contests the authenticity of the Subcontract Agreement or Settlement Agreement, they will be incorporated into the Complaint and all facts contained therein are assumed to be true for the purpose of considering this motion.

534 F.3d at 1022, the Court will not assume that the plaintiff can prove facts different from those alleged in the complaint, *see Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *Jack Russell Terrier Network of N. Cal. v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1035 (9th Cir. 2005). Similarly, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998).

## II. Analysis

### A. Common Law Indemnity

#### 1. Whether the Contractual Indemnity Claim Precludes the Common Law Indemnity Claim

In their Complaint, Plaintiffs assert both common law and contractual indemnity claims, seeking to collect the portion of the settlement that they allege they paid BHP on behalf of Defendant. (Dkt. # 1 Pt. 2 at 26.) Defendant contends, however, that because Plaintiffs have alleged the existence of a contractual indemnity clause, Plaintiffs' claim for common law indemnity is not legally cognizable and is barred. (Dkt. # 7 at 6-7.) Defendant argues that Plaintiffs must rely upon the contractual indemnification clause alone because, "by such an express contract[,] the parties have already themselves determined how and under what circumstances losses shall be allocated." (*Id.* at 6.) However, Plaintiffs argue that they have the right to assert both contractual and common law indemnity claims, even though they may only recover under one of the two theories. (Dkt. # 15 at 2-3.)

Under Arizona law, "recovery under a contract providing for indemnity obviates any right to recover under the common law theory of implied indemnity . . . ." *INA Ins. Co. of N. Am. v. Valley Forge Ins. Co.*, 150 Ariz. 248, 252, 722 P.2d 975, 979 (Ct. App. 1986); *see also MT Builders, L.L.C. v. Fisher Roofing, Inc.*, 219 Ariz. 297, 302, 197 P.3d 758, 763 (Ct. App. 2008) ("When, as here, there is an express indemnity agreement between parties, the extent of the duty to indemnify must be determined from that agreement."). Additionally, the Ninth Circuit has held that indemnity claims are not to be determined under common law

rules where there is an existing contract. *See Booth-Kelly Lumber Co. v. S. Pac. Co.*, 183 F.2d 902, 906 (9th Cir. 1950). Therefore, the recovery of damages under both causes of action simultaneously is clearly precluded, but not the pleading of both causes of action. *See INA Ins. Co.*, 150 Ariz. at 252, 722 P.2d at 979 (using common law principles to supplement a contractual indemnity provision); *see also McGinn v. N.W. Steel & Wire*, 386 N.E.2d 71 (Ill. App. 1978) (allowing Plaintiffs to assert both contractual and common law indemnity claims).

Generally, the practice of pleading alternative causes of action, regardless of the consistency of the claims, is sanctioned under the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 8(d)(2)-(3). As it is early in the course of this litigation, it is unknown whether the contractual agreement between the parties will be contested. As such, pending a conclusion about the validity of the contract, recovery under a common law indemnity claim is plausible.

**2. Whether the Common Law Indemnity Claim is Properly Pled**

Defendant additionally argues that Plaintiffs have not successfully pled a common law indemnity claim. (Dkt. # 7 at 7-8.) To prevail on a common law indemnity claim, a plaintiff must show: "First, [that] it has discharged a legal obligation owed to a third party; second, [that] the indemnity defendant was also liable to the third party; and third, [that] as between itself and the defendant, the obligation should have been discharged by the defendant." *MT Builders*, 219 Ariz. at 303, 197 P.3d at 764 (citing *Am. & Foreign Ins. Co. v. Allstate Ins. Co.*, 139 Ariz. 223, 225, 677 P.2d 1331, 1333 (Ct. App. 1983)). Defendant does not contest the existence of the first and third factors. (Dkt. # 7 at 7.) Defendant argues only that Plaintiffs' Complaint fails to allege facts that plausibly support the conclusion that MMLA owed an independent duty[4] to BHP out of which liability could arise. (Dkt. # 7 at 4-5.)

---

[4] Liability from an indemnity defendant to a third party generally arises out of an independent legal duty between the parties. *See Am. & Foreign Ins. Co.*, 139 Ariz. at 225, 677 P.2d at 1333 (referring to liability as "duty"); *see also* Restatement (First) of Restitution § 76 cmt. a (1937) ("The rule . . . applies where two or more persons are subject to a duty to a third person . . . .").

- 6 -

In Arizona, "duties of care may arise from special relationships based on contract, family relations, or conduct undertaken by the defendant." *Gipson v. Kasey*, 214 Ariz. 141, 145, 150 P.3d 228, 232 (2007) (citing *Stanley v. McCarver*, 208 Ariz. 219, 221, 92 P.3d 849, 851 (2004)). Here, MMLA allegedly entered into a subcontract with Plaintiff SRK, and Arizona law recognizes that "a common-law indemnity claim may be asserted by a contractor against its subcontractors." *Evans Withycombe, Inc. v. W. Innovations, Inc.*, 215 Ariz. 237, 243, 159 P.3d 547, 553 (Ct. App. 2006) (citing *Ewing v. Goettl's Metal Prods. Co.*, 116 Ariz. 484, 487, 569 P.2d 1382, 1385 (Ct. App. 1977)). Further, the Subcontract Agreement specifies that the work that MMLA was to perform was for the express benefit of the mine owner, BHP. (Dkt. # 7 Pt. 2 Ex.1 at 2.) Even if the design services were undertaken in the absence of the explicit Subcontract Agreement, such services performed by MMLA for the benefit of BHP establish the type of subcontractor relationship out of which an independent duty to BHP arises. *Flagstaff Affordable Housing, LP v. Design Alliance, Inc.*, No. 1 CA-CV 07-0743, 2009 WL 75528, at *3 (Ct. App. Apr. 20, 2009) ("In relationships between professionals and their clients, the law imposes special duties to all within the foreseeable range of harm as a matter of public policy, regardless of whether there is a contract, express or implied, and generally regardless of what its covenants may be." (quotations omitted)). Thus, by virtue of the relationship between itself, SRK, and BHP, the Complaint contains sufficient facts supporting the existence of an independent duty extending from MMLA to BHP. As such, Plaintiffs' Complaint pleads "enough facts to state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

The Court therefore denies Defendant's motion to dismiss the common law indemnity claim to the extent that the cause of action will be relied upon for recovery only in the event that the contractual indemnity clause is found invalid during the course of the litigation.

### B. Contribution

In the Complaint, Plaintiffs claim they are entitled to contribution from Defendant for the damage to BHP's mine caused by MMLA. (Dkt. # 1 Pt. 2 at 26.) Defendant argues this claim should be dismissed because a contribution claim requires joint and several liability and in this case, Plaintiffs' liability is several only. (Dkt. # 7 at 8.)

A legally cognizable right to contribution exists under Arizona law if: (1) there is joint and several liability; (2) a tortfeasor has paid more than his pro rata share of the common liability; and (3) the liability of the non-paying tortfeasor has been extinguished by a reasonable settlement agreement. Ariz. Rev. Stat. § 12-2501. The right to contribution has been eliminated in most cases with the adoption of Section 12-2506 of the Arizona Revised Statutes, which abolished joint and several liability under most circumstances.[5] *PAM Transp. v. Freightliner Corp.*, 182 Ariz. 132, 133, 893 P.2d 1295, 1296 (1995). Under Section 12-2506(D), however, a "party is responsible for the fault of another person, or for payment of the proportionate share of another person" when: (1) "the party and the other person were acting in concert;" (2) the "other person was acting as an agent or servant of the party;" or (3) "the party's liability for the fault of another person arises out of a duty created by the federal employers' liability act."

Here, Plaintiffs argue that the second exception applies and joint and several liability exists because MMLA was acting as an agent of SRK. (Dkt. # 15 at 4-5.) The Arizona Supreme Court has explained that joint and several liability remains under the second

---

[5]Where liability is not joint and several, there is no common liability to discharge and therefore no "right of contribution when a single tortfeasor settles a plaintiff's claim against him." *Cella Barr Assocs. v. Cohen*, 177 Ariz. 480, 484-85, 868 P.2d 1063, 1067-68 (Ct. App. 1994). Where liability is several only, it is not possible to hold a defendant to an obligation to pay more than its respective share of damages and "the primary reason for contribution disappears." *Pam. Transp.*, 182 Ariz. at 134, 893 P.2d at 1297. The purpose of contribution is to prevent one defendant from having to bear the burden of all damages when he was not the cause of all damages. *Id.*

exception between a principal and agent because there is vicarious liability.[6] *Wiggs v. City of Phoenix*, 198 Ariz. 367, 371, 10 P.3d 625, 629 (2000).

It is true that, as a matter of contract, Plaintiff was liable to BHP for the scope of work it contracted to perform for BHP. It is also true that SRK subcontracted out some of that work to MMLA, and that, as a matter of contract, MMLA agreed to assume responsibility to SRK for any negligent performance by it of that work. Thus, while MMLA may be responsible as a matter of contract to SRK for any negligent performance of the scope of its contracted work, SRK is generally not vicariously liable to BHP in tort for the negligence of an independent contractor. *Wiggs*, 198 Ariz. at 369, 10 P.3d at 627.

Despite this rule, however, a contractor is still vicariously liable for the tort of a subcontractor if the subcontractor is the agent of the contractor. MMLA may or may not be an agent of SRK for purposes of imposing vicarious/joint and several liability on SRK for MMLA's scope of performance. *Id.* at 370, 10 P.3d at 628. But, vicarious liability for an independent contractor's negligence may only be established in limited circumstances. *Sprint Commc'ns Co. v. W. Innovations, Inc.*, ___ F. Supp. 2d. ___, No. CV-06-2064-PHX-ROS, 2009 WL 597212, at *8-10 (D. Ariz. Mar. 9, 2009). These limited circumstances include the following situations: when a principal's work creates a particular risk of harm that results in bodily harm, the principal has retained control of the work delegated to the independent contractor and physical harm results to others whose safety the principal owes a duty to act with reasonable care, or when there is a non-delegable duty to the public interest. *Id.* at *8-9.

Plaintiffs argue that vicarious liability is established because a non-delegable duty exists. (Dkt. # 15 at 5.) When there is a non-delegable duty, the principal is vicariously liable for the negligence of an independent contractor and the independent contractor is the principal's agent as a matter of law. *Wiggs*, 198 Ariz. at 370-71, 10 P.3d at 628-29. A

---

[6] Joint and several liability is preserved in this situation because those whose liability is vicarious have no fault to allocate, but "someone else's fault is imputed to them by operation of law." *Wiggs*, 198 Ariz. at 371, 10 P.3d at 629.

non-delegable duty arises in special situations when a higher degree of care is prescribed by law and the duty of an employer is important enough that he may not escape liability by delegating the duty to an independent contractor. *Simon v. Safeway, Inc.*, 217 Ariz. 330, 338, 173 P.3d 1031, 1039 (Ct. App. 2007). For vicarious liability to exist under the non-delegable duty doctrine, a statute, regulation, contract, franchise, or charter must impose the duty upon the principal or the duty must be non-delegable under the common law. *Id.* A non-delegable duty may exist when there is a duty to the public interest, *Sprint*, 2009 WL 597212, at *8, when a possessor of land has a duty to make land safe for business invitees, or when the work of an independent contractor is inherently dangerous, *Ft. Lowell-NSS Ltd. v. Kelly*, 166 Ariz. 96, 98-99, 800 P.2d 962, 964-65 (1990).

Plaintiffs have not raised arguments or pled facts to allow the Court to make a reasonable inference of the above-mentioned situations in which a non-delegable duty would arise. In their Response, Plaintiffs claim a non-delegable duty exists because Plaintiffs contracted with BHP to provide specific services and delegated part of that work to Defendant, while Plaintiffs remained liable to BHP.[7] (Dkt. # 15 at 5.) Plaintiffs, however, cite no legal authority to support the notion that performance of design services is a non-delegable duty. Additionally, Plaintiffs have not pled facts that make it plausible that a statute, regulation, contract, franchise, or charter imposes a non-delegable duty upon Plaintiffs or that Plaintiffs had a duty to the public interest, that the work of Defendant was

---

[7]Plaintiffs argue in their Response that Plaintiff SRK was vicariously liable for Defendant because Plaintiffs remained liable to BHP for the work Defendant performed. (Dkt. # 15 at 4.) This legal conclusion is unsupported by factual allegations in the Complaint. (Dkt. # 1 Pt. 2.) No facts have been pled that could lead to a reasonable inference that Plaintiffs were liable to BHP for Defendant's negligent work, as opposed to being liable for breaching their contract with BHP. The Settlement Agreement between BHP and Plaintiffs does not suggest Plaintiffs were liable for Defendant's work. (*See* Dkt. # 16 Pt. 2.) The Settlement Agreement explicitly states that no liability is admitted in the Release and Settlement Agreement. (*Id.* at 3.) Defendant is not explicitly named in the Settlement Agreement. (*Id.*) While the Settlement Agreement does release Plaintiffs' "agents" from liability (*id.* at 2), no facts have been pled to plausibly support the claim that Defendant is an agent of Plaintiffs for which Plaintiffs were vicariously liable.

inherently dangerous, or that any other situation in which a non-delegable duty may arise under the common law is applicable in this case. The assertion in Plaintiffs' Response that a non-delegable duty exists, without facts pled within the Complaint to support an inference of the assertion, is not sufficient to survive a motion to dismiss.

While a legally cognizable right to contribution exists under Arizona law when there is joint and several liability, Ariz. Rev. Stat. §§ 12-2501, 12-2506, Plaintiffs have not pled facts on the face of their Complaint to allow the Court "to draw the reasonable inference" that a non-delegable duty or principal/agent relationship establishing vicarious liability existed.[8] *Iqbal*, 129 S. Ct. at 1940. Plaintiffs have asserted only "labels and conclusions" more akin to the allegations found to be insufficient to survive a motion to dismiss in *Iqbal*. *Id.* at 1942. Plaintiffs assert in their Response that there is vicarious liability, that Defendant is an agent, and that there is a non-delegable duty, but there is no "factual enhancement" pled on the face of the Complaint to make these conclusions plausible. Because Plaintiffs have failed to plead facts to support an inference of vicarious liability, an agency relationship, or a non-delegable duty, Plaintiffs have failed to plead facts in the Complaint that would allow

---

[8] Plaintiffs also argue that they paid more than their pro rata share of common liability and the liability of Defendant was extinguished by Plaintiffs' settlement with BHP. (Dkt. # 1 Pt. 2 at 26.) As discussed above, Plaintiffs have failed to plead sufficient facts to support joint and several liability. If Plaintiffs were not jointly and severally liable for Defendant, then there is no common liability to discharge, the settlement paid is for Plaintiffs' several liability only, and there is no right to contribution. *Cella Barr*, 177 at 484-85, 868 P.2d at 1067-68. Therefore, the Court declines to address these additional arguments.

the Court to find a plausible right to contribution.[9] Therefore, Plaintiffs' claim for contribution must be dismissed with leave to amend.

### C. Breach of Contract

In the Complaint, Plaintiffs claim that Defendant breached its contract with Plaintiff SRK by: (1) "Failing to adequately design a stormwater collection system with diversion channels that adequately removed stormwater," and (2) failing to fulfill its contractual "obligation to obtain [additional] insurance coverage for [Plaintiff]." (Dkt. # 1 Pt. 2 at 29.)[10]

---

[9] Plaintiffs argue that this case is similar to *Ewing v. Goettl's Metal Products Co.*, 116 Ariz. 484, 569 P.2d 1382 (Ct. App. 1977), and thus there is a claim for contribution. (Dkt. # 15 at 5.) In *Ewing*, the Arizona Court of Appeals held, under Federal Rule of Civil Procedure 14, which governs the circumstances in which a claim against a third-party defendant may be asserted, that the particular facts of the case established "a substantive basis indicating the third-party defendant 'is or may be liable to him (the original defendant) for all or part of the plaintiff's claim against him.'" 116 Ariz. at 486-87, 569 P.2d at 1384-85 (quoting Fed. R. Civ. P. 14(a)). However, *Ewing* does not hold that a right of contribution was established or created by Rule 14 in that case. *Id.* at 487, 569 P.2d at 1385. Additionally, *Ewing* was decided prior to *Twombly*. *Ewing* was also decided before the adoption of Sections 12-2501 and 12-2506 of the Arizona Revised Statutes and their subsequent interpretation in *Wiggs v. City of Phoenix*, 198 Ariz. 367, 10 P.3d 625 (2000), which requires vicarious liability for a contribution claim to survive in this situation. *Ewing* does not support a right to contribution in this case.

Plaintiffs also argue in their Response that the indemnity clause in the Subcontract Agreement between Defendant and Plaintiff SRK is equivalent to contractual consent to a right of contribution by Defendant. (Dkt. # 15 at 5-6.) Plaintiffs cite no legal authority supporting this argument. Nor have Plaintiffs cited any legal authority establishing that contractual consent to a right of contribution would override Arizona Revised Statutes section 12-2501, which requires joint and several liability in order for a right of contribution to exist. Plaintiffs have not established that contractual consent is a legally sufficient basis for a right to contribution.

[10] Plaintiffs' Response contains a different statement of their breach of contract claims: that Defendant was obligated "1) [t]o provide technically accurate plans for a specific project; and 2) to warrant work performed and take responsibility for any deficiencies in that work." (Dkt. # 15 at 8.) Plaintiffs assert that Defendant breached those obligations. (*Id.*) Defendant argues that Plaintiffs did not plead the second assertion in the Complaint. (Dkt. # 17 at 9.) Although the language of the contract indicates that Defendant agreed to warrant its work, Plaintiffs failed to allege in the Complaint that Defendant breached this clause of

Defendant does not seek dismissal on the second breach of contract theory. Rather, Defendant seeks dismissal of the breach of contract theory predicated upon its failure to provide adequate design services for the removal of stormwater. (Dkt. # 7 at 9.) Defendant argues that the claim is an allegation of professional negligence, which sounds in tort and not contract, because (1) the contract does not contain a specific enough promise to give rise to a breach of contract claim, and (2) Plaintiffs assert insufficient performance as opposed to failure in general to perform the terms of the contract, and thus the claim does not give rise to a contract cause of action. (Dkt. # 7 at 9, 11.)

Under Arizona law;

> even where there is an express contract between the professional and the client, an action for breach of that contract cannot be maintained if the contract merely requires generally that the professional render services. Only if there is a specific promise contained in the contract can the action sound in contract, and then only to the extent the claim is premised on the nonperformance of that promise.

*Collins v. Miller & Miller, Ltd.*, 189 Ariz. 387, 395, 943 P.2d 747, 755 (Ct. App. 1997). In *Collins*, the Arizona Court of Appeals held that a contract between attorney and client for general legal representation in a lawsuit did not meet the level of specificity required to support a breach of contract claim. *Id.* However, in *Asphalt Engineers, Inc. v. Galusha*, 160 Ariz. 134, 770 P.2d 1180, (Ct. App. 1989), the opposite result was found. In *Galusha*, an attorney and his clients entered into an oral contract providing that the attorney would file three liens on his clients' behalf. *Id.* at 135, 770 P.2d at 1181. The court held that this oral contract called for a specific enough act, beyond the mere performance of general services, the nonperformance of which was sufficient to invoke a breach of contract cause of action. *Id.*

The contract at issue here, like *Galusha*, contains specific promises relating to the adequacy and quality of the work to be performed, which differ significantly from general

---

the contract. As such, the Court will not consider any arguments raised in Plaintiffs' Response based on the warranty provision of the contract.

contracts of retainer. The Subcontract Agreement specifies that MMLA's design services will be "performed in a manner consistent with that level of care and skill ordinarily exercised by members of the profession currently practicing under similar conditions," and that "[MMLA] shall be responsible for the professional quality, technical accuracy and the coordination of all designs . . . ." (Dkt. # 7 Pt. 2 Ex. 1 at 4.) The contract also explicitly states that the plans provided must be "adequate." (Dkt. # 1 Pt. 2 at 29.) These statements were explicit promises of the contract, the breach of which may sound in contract. As such, Plaintiffs' allegations of breach of contract for failure to provide adequate[11] designs amount to an assertion of non-performance of these specific contractual promises. Because Plaintiffs allege nonperformance of these specific contractual promises, Defendant's Motion to Dismiss the breach of contract claim is denied.

## CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that the Motion to Dismiss of Defendant Psomas (Dkt # 7) is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** granting Plaintiffs leave to amend Count III of the Complaint by **5:00 P.M.** on **September 4, 2009**.

DATED this 11th day of August, 2009.

_____
G. Murray Snow
United States District Judge

---

[11] In the Complaint, Plaintiffs assert that Plaintiff SRK and Defendant entered into a contract for the design of stormwater diversion channels at the mining facility and that "[Defendant] breached its contract by failing to adequately design a storm water collection system with diversion channels that adequately removed stormwater." (Dkt. # 1 Pt. 2 at 29.)

- 14 -