**WO**

NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| SRK Consulting (U.S.) Inc, an out of state corporation, and AIG Commercial Insurance Company of Canada, a foreign corporation,<br><br>　　　　　Plaintiffs,<br><br>vs.<br><br>MMLA PSOMAS, Inc., an Arizona corporation,<br><br>　　　　　Defendant. | No. CV-09-611-PHX-GMS<br><br>**ORDER** |

Pending before the Court is the Motion for Partial Summary Judgment filed by Plaintiffs SRK Consulting ("SRK") and AIG Commercial Insurance Company of Canada ("AIG"). (Dkt. # 38.) Specifically, SRK and AIG (collectively "Plaintiffs") assert that Defendant MMLA PSOMAS, INC. ("PSOMAS") agreed to indemnify SRK for any damages, including those caused by SRK, related to a drainage plan designed by PSOMAS. (*Id.*) For the reasons set forth below, the Court denies the Motion.

**BACKGROUND**

This case arises out of the closure of the San Manuel Mine in Pinal County, Arizona. (Dkt. # 39 at ¶ 1; Dkt. # 41 at ¶ 1.) In conjunction with the mine's closure, SRK agreed to provide BHP Copper, Inc. ("BHP"), who owned and operated the mine, with certain engineering services. (Dkt. # 39 at ¶ 2; Dkt. # 41 at ¶ 2.) SRK further agreed to indemnify

1  BHP for any damage caused by SRK's negligence in rendering these services.

2  Shortly thereafter, in November 2003, SRK entered into a contract with PSOMAS, whereby the latter agreed to provide "detailed regrading and drainage plans" in connection with the mine's closure. (Dkt. # 39, Ex. 1.) The contract contained the following indemnity obligation in SRK's favor:

> <u>Indemnification</u>. [PSOMAS] agrees to defend, hold harmless and indemnify SRK for all claims, costs or damages of any description (including all expenses and attorneys' fees) resulting or alleged to result from [PSOMAS's] errors, omissions, negligence or other failure and defects in design, engineering and related services. It is the intent of the parties that any liability of any kind arising out of or alleged to arise out of work for which [PSOMAS] is responsible shall fall upon [PSOMAS] and upon no other person or entity.

(*Id.*)

In July 2006, a series of monsoon storms struck the San Manuel area and caused damage to a portion of the mine known as the Heap Leach Facility ("HLF"). (Dkt. # 39 at ¶ 5; Dkt. # 41 at ¶ 3.) As a result of this damage, BHP sought indemnification from SRK for a portion of the cost of repairs. (Dkt. # 39, Exs. 2–3.) According to BHP, the damage was caused by the inadequate design of the drainage and erosion control systems. (*Id.*) A subsequent evaluation of the drainage plan, conducted by Rimkus Consulting Group, Inc. ("RCG"), indicated that SRK, PSOMAS, and BHP were equally "responsib[le] for the inadequate HLF storm water collection system design" which caused the damage to the mine. (Dkt. # 41, Ex. 1.) Based on its contract with PSOMAS, SRK then filed the instant action seeking indemnification from PSOMAS for the costs incurred by SRK as a result of the damages to the HLF.

Plaintiffs now move for partial summary judgment with respect to their interpretation of PSOMAS's indemnity obligation. According to Plaintiffs, the indemnity provision is a "specific indemnity" provision which obligated PSOMAS to "indemnify SRK even if SRK was partially at fault for damages to" the HLF design. (Dkt. # 38 at 3.)

## LEGAL STANDARD

| | |
|---|---|
| 1 | A party seeking summary judgment "always bears the initial responsibility of |
| 2 | informing the district court of the basis for its motion, and identifying those portions of |
| 3 | [the record] which it believes demonstrate the absence of a genuine issue of material fact." |
| 4 | *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the |
| 5 | evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no |
| 6 | genuine issue as to any material fact and that the movant is entitled to judgment as a matter |
| 7 | of law." Fed. R. Civ. P. 56(c). Only disputes over facts that might affect the outcome of the |
| 8 | suit will preclude the entry of summary judgment, and the disputed evidence must be "such |
| 9 | that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty* |
| 10 | *Lobby, Inc.*, 477 U.S. 242, 248 (1986). |

**DISCUSSION**

General principles of contract law provide that when parties bind themselves to a lawful contract, the terms of which are clear and unambiguous, courts must give effect to the contract as written. *Estes Co. v. Aztec Constr., Inc.,* 139 Ariz. 166, 168, 677 P.2d 939, 941 (Ct. App. 1983). Indemnity provisions are "strictly construed and generally will not protect an indemnitee against its own negligence unless the indemnitor's obligation to do so is expressed in clear and unequivocal terms." *Wash. Elem. Sch. Dist. v. Baglino Corp. # 6*, 169 Ariz. 58, 61, 817 P.2d 3, 6 (2006). "When language in an indemnity agreement does not specifically discuss what effect the indemnitee's negligence has upon the obligation to indemnify, the agreement is generally considered a general indemnity agreement." *Cunningham v. Goettl Air Conditioning, Inc.*, 194 Ariz. 236, 240, 980 P.2d 489, 493 (1999). *Grubb*, 213 Ariz. at 86, 138 P.3d at 1213. For example, a provision whereby the indemnitor agrees to "indemnify and hold harmless of and from any and all liability incurred by it for any reason whatsoever" has been found as a general indemnity agreement. *Grubb & Ellis Mgmt. Servs. Inc. v. 407417 B.C., LLC.*, 213 Ariz. 83, 87, 138 P.3d 1210, 1214 (Ct. App. 2006). Under a general indemnity agreement, an indemnitee is usually entitled to

indemnification for a loss resulting from its passive negligence, but not active negligence.[1]

Specific indemnity agreements, on the other hand, impose upon an indemnitor an obligation to indemnify for any type of damage, even if caused by the negligence of the indemnitor. *Id.* For instance, a provision whereby a party agrees "regardless of whether or not [the injury] is caused in whole or part by any negligent act or omission of the [indemnitee]" is interpreted as a specific indemnification agreement because it is clear and unambiguous that the indemnitee is protected from its own negligence. *Id.* (quoting *Baglino Corp.*, 169 Ariz. at 61–62, 817 P.2d at 6–7). Nonetheless, "[t]here is . . . no requirement that the term negligence actually be used, or that specific reference be made to liability arising out of the indemnitee's negligence." *Baglino*, 169 Ariz. at 61; 817 P.2d at 6 (citation omitted). Where "the language of an indemnity agreement 'clearly and unequivocally indicates that one party is to be indemnified, regardless of whether or not that injury was caused in part by that party, indemnification is required notwithstanding the indemnitee's active negligence.'" *See Cunningham*, 194 Ariz. at 240, 980 P.2d at 493.

The contract language employed by SRK and PSOMAS does not clearly and unambiguously state that PSOMAS intended to protect SRK from its own negligence. The relevant indemnity provision provides only that PSOMAS "agrees to . . . indemnify SRK for all . . . costs or damages of any description . . . resulting . . . from [PSOMAS's] errors, omissions, negligence or other failure and defects in design, engineering and related services." (Dkt. # 39 at ¶ 4.) The agreement also provides, "It is the intent of the parties that any liability of any kind arising out of . . . work <u>for which [PSOMAS] is responsible</u> shall fall upon [PSOMAS] and upon no other person or entity." (*Id.*) While this provision indicates PSOMAS's intent to indemnify SRK for damages resulting from PSOMAS's negligence, it

---

[1] Active negligence is found if an indemnitee has "personally participated in an affirmative act of negligence, was connected with negligent acts or omissions by knowledge or acquiescence, or has failed to perform a precise duty which the indemnitee has agreed to perform." *Estes*, 139 Ariz. at 169, 677 P.2d at 943. Passive negligence is found in mere nonfeasance, "such as the failure to discover a dangerous condition, perform a duty imposed by law, or take adequate precautions against certain hazards inherent in employment." *Id.*

- 4 -

does not provide "clear and unambiguous" amenability to indemnification for SRK's conduct.

SRK's reliance on *Baglino* and *Cunningham* is misplaced. Each of these cases involved indemnity provisions that specifically defined the circumstances under which the indemnitee was entitled to indemnification. In *Baglino*, for instance, the parties' indemnification clause contained language requiring indemnification "regardless of whether or not the injury is caused *in part* by a party indemnified hereunder." 169 Ariz. at 61, 817 P.2d at 6 (emphasis added). Similarly, the indemnification agreement in *Cunningham* required the indemnitor to "indemnify and hold [the indemnitee] harmless against any and all claims and expenses . . . arising from any accident or other occurrence . . . when such injury will be caused *in part* or in whole by the act, neglect, fault of or omission of any duty or negligence of [the indemnitor]." 980 P.2d at 493 (internal marks omitted) (emphasis added).

These cases are distinguishable from the instant case. Though the indemnification clause at issue provides that PSOMAS shall indemnify SRK for "liability of any kind," this provision is immediately modified by language that limits liability to damages resulting from "work for which [PSOMAS] is *responsible*." The clause does not require that PSOMAS indemnify SRK for harms caused *in part* by SRK or damages for which PSOMAS was *partially* responsible. Instead, reading the clause as a whole, it simply requires indemnification for "errors, omissions, negligence, or other failure and defects in design and related services . . . for which [PSOMAS] is responsible." (Dkt. # 39 at ¶ 4.) Given that an indemnity provision is usually considered a general indemnity agreement unless the contract language clearly and unambiguously provides otherwise, PSOMAS is not liable under the contract for the portion of damages caused by SRK's active negligence. *See Grubb*, 213 Ariz. at 87, 138 P.3d at 1214 ("[A]n agreement to 'indemnify and hold [the indemnitee] harmless of and from any and all liability incurred by it for any reason whatsoever' has been construed as a general indemnity clause that does not protect an indemnitee against its own active negligence notwithstanding the agreement's broad language.") (quoting *Royal Props., Inc.*

*v. Ariz. Title Ins. & Trust*, 13 Ariz.App. 376, 378, 476 P.2d 897, 899 (1970)).[2]

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion for Partial Summary Judgment (Dkt. # 38) is **DENIED**.

DATED this 20th day of July, 2010.

*H. Murray Snow*
G. Murray Snow
United States District Judge

---

[2] In its Response to SRK's Motion for Partial Summary Judgment, PSOMAS denies that it breached the standard of care in the work that it performed in the HLF. (Dkt. # 41 at ¶ 13.) According to PSOMAS, the HLF failed for a number of reasons unconnected to its design. (*Id*. at ¶ 14.) The issue of PSOMAS's alleged negligence, however, is not now properly before the Court. The instant motion pertains only to the question of whether the indemnification clause requires PSOMAS to indemnify SRK for the portion of damages attributed to SRK. The Court, therefore, need not address PSOMAS's contention that its conduct was not negligent.